IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| United States, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 07 CR 617-2 |
| v. | ) ) | Judge Virginia M. Kendall |
| Kandia Gray, | ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Kandia Gray ("Gray" or "the Defendant") is charged with knowingly and intentionally possessing with intent to distribute in excess of five hundred grams of mixtures and substances containing cocaine, a Schedule II Narcotic Drug Controlled Substance in violation of Title 21, United States Code, Section 814(a)(1). Gray brought a Motion to Suppress arguing first that the contraband recovered from his vehicle should be suppressed because his vehicle was searched without a warrant and no exception to the warrant requirement applied. Specifically, he argues that 1) he did not commit the alleged traffic violations that police allege gave them probable cause to pull him over; 2) the contraband in his car was not in plain view; and 3) he was arrested prior to the search of the car. Gray further argues that because the search was improper, his resultant statement should be suppressed as a "fruit of the poisonous tree." This Court held a hearing on the Motion to Suppress on February 5, 2008 and February 25, 2008. For the reasons stated below, this Court denies Gray's Motion to Suppress.

**FACTUAL BACKGROUND**

On September 17, 2007, Kandia Gray ("Gray" or "the Defendant") drove to the area of 23rd Street and Pulaski in Chicago in order to purchase cocaine from Juan Carlos Garcia ("Garcia"). Gray drove a blue van to the location and parked on 23rd Street and called Garcia by cellphone to tell him that he had arrived. A few minutes later, Garcia came out of the residence and entered the passenger side of Gray's van. Garcia handed Gray a small dark bag with a drawstring drawn closed which contained two kilograms of cocaine. Gray put the bag behind the driver's seat; Garcia left the van, and Gray drove away.

Gray began driving on the Stevenson expressway heading east. While he was driving, DEA agents determined he was speeding and that he failed to use his turning signal when he headed southbound on Pulaski. When he reached the Dan Ryan expressway, Gray switched lanes repeatedly without signaling and was driving over the speed limit. Gray exited at 76th Street. After turning east on 76th Street, an unmarked police car with interior flashing lights and siren pulled up quickly behind Gray's van but Gray did not pull over and stop. Finally, another police vehicle pulled up to the side of Gray's van and made a sharp turn in front of him in order to block him in. DEA agent, Keith Bakewell ("Agent Bakewell"), jumped out of the Blazer with his weapon drawn and ordered Gray out of the van. Agent Bakewell then opened the front door of Gray's van, pulled him out of the vehicle and placed him in handcuffs and put Gray in the back seat of his car.

While sitting in the car, Gray observed officers looking through his van with flashlights. According to the Agent, he orally recited Miranda rights to Gray in the car at this time and later provided him with a written Miranda form. Gray admits that he was handed a sheet to sign, that the officer explained it to him after he read it and that he signed this document. At some point during

2

the other officers' search of the van, one of the searching officers pointed at Agent Brakewell and using his hands pointed first to his own eyes, then placed his first two fingers in the air and pointed back to the van. Agent Brakewell interpreted this gesturing to mean that he sees a package with two in the car. At this point, Brakewell told Gray that the officers see the package in the car, that they have him now and asked if they could look in the car. Gray agreed to the search according to Agent Brakewell, and this is reflected in his report of the investigation. Gray denies this.

Agents retrieved a black bag containing two "bricks" of cocaine. At that point, Gray was read his rights and was provided his Miranda rights in written form which he initialed. He was then transported to the police station.

Officer Michael Benaitis ("Officer Benaitis") from the Bridgeview Police Department also testified that he conducted surveillance of the drug deal and observed Gray leaving the residence with the black bag. He testified that the thin black bag easily revealed the impression of square objects inside of it the size of kilograms of cocaine. He had experience in drug cases and was familiar with the shape of two "bricks" of cocaine. Officer Benaitis also confirmed that Gray was speeding and changing lanes without signaling until the traffic stop was made. When Agent Bakewell had Gray in his car, it was Officer Benaitis who first looked through the window of the van and saw the same bag he had observed previously during his surveillance lying on the floor of the van. The back windows of the van were tinted but the driver's window and the windshield were not. In spite of the back windows being tinted, Benaitis testified that he could see the black bag against the grey floor because the dome light was on from the door being open. Once he saw the bag, he gestured to Agent Bakewell that he observed the two in the car. Agent Bakewell asked him to wait twice before he finally told Officer Benaitis that he could search the car.

**DISCUSSION**

The Fourth Amendment exists to safeguard the privacy of individuals against arbitrary invasions by government officials. *See Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523 U.S. 523, 528 (1967). Therefore, the Fourth Amendment requires that every search or seizure must be "reasonable." *See* U.S. Const. amend. IV; *United States v. Childs*, 277 F.3d 947, 950 (7th Cir. 2002). To be reasonable, the search or seizure must be supported by probable cause. *See United States v. Ortiz,* 422 U.S. 891, 896 (1975) ("To protect . . . privacy from official arbitrariness, the Court always has regarded probable cause as the minimum requirement for a lawful search."). Probable cause exists when the facts and circumstances reasonably support a belief that the individual has committed, is committing, or is about to commit an offense. *See Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007). Because courts assess probable cause from an objective standpoint, the Court looks at the conclusions that the arresting officer reasonably might have drawn from the information known to him rather than his subjective reasons for acting. *See id.* Therefore, the Court must determine whether probable cause existed to justify the search and seizure of Gray.

I. Traffic Stop

Gray first alleges that there was no basis to stop his van. He testified that he was driving carefully because he knew there was cocaine in his van and therefore he knew he was not speeding or weaving in and out of lanes. Because there was no basis to stop his van, he claims that the cocaine that was recovered as a result of that stop must be suppressed.

The decision to stop a vehicle for a traffic violation must be objectively reasonable. *See Wren v. United States*, 517 U.S. 806, 810 (1996). The police officer's actions are reasonable if he

4

has probable cause to believe that a traffic violation has occurred. *See id.* "An officer has probable cause for a traffic stop when she has an 'objectively reasonable' basis to believe a traffic law has been violated." *United States v. McDonald*, 453 F.3d 958, 961-62 (7th Cir. 2006). Although probable cause requires more than a bare suspicion of criminal activity, it does not require evidence sufficient to support a conviction. *See Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007). "The Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (emphasis in original).

Because courts assess probable cause objectively, "a court looks at the conclusions that the arresting officer reasonably might have drawn from the information known to him rather than his subjective reasons for making the arrest." *Holmes*, 511 F.3d at 679. Even when a police officer's subjective basis for making a traffic stop is not supported by probable cause, the police officer does not violate the Fourth Amendment if an objectively reasonable alternative basis for making the stop existed. *See Williams v. Rodriguez*, 509 F.3d 392, 399 (7th Cir.2007) ("[T]he Fourth Amendment's focus on reasonableness dictates an objective analysis, whereby, 'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'") (*quoting Devenpeck*, 543 U.S. at 153).

Here, the Agent testified credibly that the van being driven by Gray was driving over the speed limit thereby violating traffic laws. He further testified that he was trained at the police academy regarding traffic violations and knew that the manner in which Gray was changing lanes constituted improper lane usage. He also observed that Gray did not use his signal when he turned

5

the corner. Finally, he testified that Gray did not stop for the flashing lights and siren of his law enforcement vehicle but rather only slowed down. Although Gray challenges his driving he does so with the mere conjecture that he does not believe he would have committed any traffic violations because he knew he was carrying illegal drugs in the car. This conjecture supported only by his self-serving statement is not sufficient to outweigh the trained officer's credible testimony which is also corroborated by another officer on the scene. Significantly, Gray also admits that another police vehicle cut him off and made him stop at the time of the traffic stop. Therefore, Gray's own testimony corroborates the officer's statement that the vehicle did not stop in response to the police siren and lights and therefore the officer needed to cut off Gray's car and "curb" it. Any one of these traffic violations– speeding, improper lane usage, failure to use a turning signal and failure to pull to the side when a police vehicle with lights and siren is directing the vehicle to stop–is a sufficient basis for the law enforcement officers to pull over the car for a traffic stop.

Gray was arrested on the scene and claims that this Court can find that there was no probable cause for that arrest because he was not given traffic violations but was rather arrested for the drug deal that had taken place earlier. In *Williams*, a police officer pulled behind a car that had stopped on Lake Shore Drive in Chicago. *Williams*, 509 F.3d at 396. After administering field sobriety tests on the motorist, the officer placed the motorist under arrest for driving under the influence of alcohol. *Id.* at 397. After a bench trial in state court, the motorist was found not guilty of driving under the influence and obstructing traffic. *Id.* at 398. In the ensuing § 1983 action for false arrest, the motorist argued that probable cause did not exist for the driving under the influence charge. *Id.* at 400. In rejecting his claim, the *Williams* Court specifically found:

> because the facts known to the [officer], when viewed objectively, would have provided a reasonable officer with probable cause to

> believe [the motorist] had [obstructed traffic], it was within his authority, without violating the Fourth Amendment, to arrest [the motorist] for that violation. *Due to the objective nature of the probable cause analysis, it is of no consequence that [the officer's] subjective reason for making the arrest was driving under the influence rather than [obstructing traffic].*

*Id.* at 401 (emphasis added). Similarly, the officers here had probable cause to believe that Gray had violated numerous traffic laws and therefore it was within their authority to arrest for any of those violations.

B. Gray's Arrest

Once the officers stopped Gray for violating Illinois law, they were permitted to arrest him. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *see also Williams*, 509 F.3d at 400-01 (holding that under the Fourth Amendment, police could arrest motorist who violated the Illinois Motor Code by improperly pulling over to the side of the road); *Chortek v. City of Milwaukee*, 345 F.3d 740, 745 (7th Cir. 2004) ("Arrest for a minor, non-jailable offense does not violate the Fourth Amendment.").

C. Search of the van

After Gray was arrested, the officers conducted a search of Gray's van. Gray claims that he did not consent to this search; the officers claim he did.

"Under the automobile exception to the warrant requirement, a law enforcement officer need not have a warrant to search a vehicle when 'there is probable cause to believe the search will uncover contraband or evidence of the crime.'" *United States v. Hines*, 449 F.3d 808, 814 (7th Cir. 2006) (*quoting United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005)). "Probable cause to

conduct a search of this type exists if, given the totality of the circumstances, there is a 'fair probability that contraband or evidence of a crime will be found in the vehicle.'" *United States v. Johnson*, 383 F.3d 538, 545 (7th Cir. 2004) (*quoting Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

In *Johnson*, as in this case, officers performed a search incident to arrest following a traffic stop. *Johnson*, 383 F.3d at 545-46. During the search, officers found controlled substances on the driver. *Id.* at 546. The discovery of a banned substance on the driver's person during the search incident to the arrest gave officers probable cause to search the vehicle, because "the officer had a reasonable basis for believing that more drugs or other illegal contraband may have been concealed inside." *Id.* (*citing United States v. Young*, 38 F.3d 338, 340 (7th Cir. 1994)).

Here, Officers were conducting surveillance of a house known as a "stash house" according to an informant's information. They observed the target of their investigation leave that house with a bag containing what a narcotics officer believed to be two bricks of cocaine. They observed this target enter Gray's car with the bag and then exit the car. Officers surveilled Gray's car from the moment he left the house to the moment he was arrested. Gray did not make any stops, pick up any other individuals, or drop anything off. Therefore, officers were reasonable in thinking that there would be controlled substances contained within the car.

Therefore, regardless of the consent to search issue, the Officers did not violate the Fourth Amendment by searching Gray's car incident to his arrest. Before addressing the consent issue, the Court notes that the police would have lawfully recovered the bag of cocaine even if they did not search the car at the time of Gray's arrest. Once Gray was taken into custody, the car would have been impounded by the police and a subsequent inventory search would have revealed the bag with the drugs. *See e.g. United States v. Woody*, 55 F.3d 1257, 1270 (7th Cir. 1995)(Even if roadside

8

search of locked glove compartment was unlawful, police would have recovered stolen checks through inventory search). This bag would have been inevitably discovered and therefore admissible as an exception to the exclusionary rule. *See Nix v. Williams*, 467 U.S. 431, 448 (1984); *United States v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006).

D. Gray's consent

Although not necessary to reach to justify the seizure of the cocaine for the above-stated reasons, the Court further finds the Officers' testimony to be credible on the issue of whether Gray orally consented to the search of his vehicle. Although Gray denies that he orally consented, he did not testify credibly in a number of areas and therefore the Court discredits his statement that he refused consent to search the van.

Gray at one point on cross-examination testified that he did not know what was in the bag he received from the target of the investigation. He claimed that he received the bag closed and that he could not tell what was in the bag. He stated this even though he further testified that he had just provided the target with $40,000 in exchange for the bag. Earlier on direct, Gray testified that he knew he had drugs in the car and that was the reason why he was driving so carefully. The Court notes that the bag that was introduced into evidence is made of very thin nylon-like material which easily reveals the shape of the object within it when objects are placed within it. Therefore, the brick-like shapes of cocaine would have been readily detectable.

Another area of lack of credibility during his testimony concerned his awareness of his *Miranda* rights. Gray is no stranger to being arrested and testified that he understood what *Miranda* rights were because he had his *Miranda* rights read to him on at least ten occasions. In spite of his direct statement that he knew and understood his *Miranda* rights, he testified that he was merely

9

given a page of paper which was not explained to him. The page was the signed *Miranda* Rights which Gray admits he manually checked off. As mentioned earlier, Gray stated he did not violate any traffic laws but admitted that he was pulled over only after a police vehicle "curbed" his car by cutting in front of it. In short, Gray's testimony is not credible in light of all of the other evidence in this case. The Court credits the officers' testimony that he, in truth, consented to the search.

## Conclusion

Because Officers had probable cause to believe that the Defendant was committing traffic violations, they had probable cause to arrest him. His vehicle was searched incident to that valid arrest and was based on probable cause that narcotics would be found in the vehicle. Even if the drugs were not found incident to the arrest, they would have been found during an inventory search and as such are admissible as inevitable discovery. Regardless, the defendant further orally consented to the search on the scene. Therefore, his motion to suppress is denied.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: December 11, 2008